OPINION
Defendants-appellants, Michael D. and Leslie Tricia Plymesser, appeal a Brown County Court of Common Pleas decision resolving a dispute about the use of a right-of-way. Based upon the analysis that follows, the decision of the trial court is affirmed.
Plaintiffs-appellees, Michael D., Jack W., and Charlotte Proffitt, own land near Free Soil Road in Georgetown, Ohio, adjacent to land owned by appellants. Appellants and the Proffitts both farm their land. Their properties share a common boundary. The Proffitts have a right of ingress and egress across appellants' land to access Free Soil Road. The parties agree that this right-of-way was created by a grant in the deed to the property now owned by appellants. This easement is acknowledged in the current deeds held by appellants and the Proffitts.
The Proffitts filed a complaint against appellants alleging, interalia, that appellants had illegally erected gates across the right-of-way. Appellants filed a counterclaim that requested, interalia, a determination of the extent of the Proffitts' right to use the right-of-way for ingress and egress.
The trial judge visited the land owned by appellants and the Proffitts to view the right-of-way and its surrounding area. After a two-day bench trial, the trial court issued a decision resolving the right-of-way dispute between the parties. Appellants appeal, raising three assignments of error for our consideration.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED BY ORDERING APPELLANTS, THE SERVIENT ESTATE OWNERS, TO REMOVE THEIR GATES FROM THE TERMINI OF THE RIGHT-OF-WAY EASEMENT.
An easement is "the grant of a use on the land of another." Alban v.R.K. Co. (1968), 15 Ohio St.2d 229, 231. More specifically, an easement is "a right, without profit, created by grant or prescription, which the owner of one estate, called the dominant estate, may exercise in or over the estate of another, called the servient estate, for the benefit of the former." Trattar v. Rausch (1950), 154 Ohio St. 286, paragraph one of the syllabus. An easement "may be acquired only by grant, express or implied, or by prescription." Id. at paragraph two of the syllabus.
A trial court's interpretation of an easement will be reviewed denovo, but any reasonable findings of fact will be upheld if the reviewing court determines that the trial court's decision is supported by competent, credible evidence. Murray v. Lyon (1994), 95 Ohio App.3d 215,219. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Myers v. Garson (1993), 66 Ohio St.3d 610,615, quoting Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
In their first assignment of error, appellants challenge the trial court's decision to order them to remove the two gates that are located at the ends of the right-of-way. The Supreme Court of Ohio has previously held that "[t]he owner of the servient estate may use the land for any purpose that does not interfere with the easement, and, in the absence of anything in the deed, or in the circumstances under which it was acquired or used, showing that the way is to be an open one, he may put gates or bars across it, unless they would unreasonably interfere with its use." (Emphasis added.) Gibbons v. Ebding (1904), 70 Ohio St. 298, paragraph two of syllabus. Appellants argue that the trial court failed to properly follow the precedent established by Gibbons when it ordered the removal of the gates that had been erected by appellants. We disagree.
The trial court determined that the gates at the ends of the right-of-way unreasonably interfered with the Proffitts' use of the right-of-way. Specifically, the trial court found that "[t]o require a person to stop, open the gate, traverse the gate, get out and close the gate, upon each and every entrance and exit would appear to be an unreasonable burden in this particular situation." Moreover, the trial court found that the gate located at the top of the right-of-way "does constitute a hazard, or at the very least a significant problem, for those attempting to negotiate the left turn onto the Proffitts' property."
The trial testimony of several witnesses demonstrated that the gates unreasonably burdened the use of the right-of-way. Michael Proffitt testified that after restrictive gates were erected at the ends of the right-of-way in 1998, he and his tenants began experiencing problems in driving farm equipment up the right-of-way. Several tenants of the Proffitts' land testified that it is a hazard to stop a tractor on the steep hillside and then to open the gate at the top of the right-of-way. One man who raised tobacco for the Proffitts testified that his tobacco cutter could not pass through the gate because it was too narrow. A man who boards horses at the Proffitts' farm testified that his trailer had once become stuck in one set of gates. In addition, a paramedic testified that he was unable to drive a life-squad vehicle up the right-of-way and through the narrow gates.
We find that the trial court's determination that the erection of gates unreasonably interfered with the Proffitts' use of the right-of-way is supported by competent, credible evidence. The first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED BY ORDERING THAT IT IS THE RESPONSIBILITY OF THE APPELLANTS, THE SERVIENT ESTATE OWNERS, TO BUILD A FENCE ALONG THE EAST SIDE OF THE RIGHT-0F-WAY EASEMENT IF THEY INTEND TO ENCLOSE LIVESTOCK FOR GRAZING PURPOSES.
At trial, Michael Plymesser testified that he intended to graze animals that would have access to the right-of-way and would graze on the right-of-way. He testified that his farm already has some horses and that he plans on raising cattle. Several witnesses testified that it would be a hazard to allow animals to graze along the right-of-way, where farmers move loads of hay, tobacco, and other crops using large farming vehicles. One witness testified that it would be dangerous for both the driver and the animals.
An owner of a servient estate may not exercise his rights in such a way as to unreasonably interfere with the special use for which the easement was created. Cincinnati, Hamilton Dayton Ry. Co. v. Wachter (1904),70 Ohio St. 113, 118; Columbia Gas Transm. Corp. v. Bennett (1990),71 Ohio App.3d 307, 319. Recognizing that appellants intended to graze livestock along the right-of-way and that the gates that had previously kept the livestock away from the right-of-way were to be removed, the trial court ordered appellants to build a fence along the right-of-way to enclose such livestock. The trial testimony indicates that allowing livestock to graze in the right-of-way would create a hazard that would be an unreasonable burden upon the use of the easement. Therefore, we overrule appellant's second assignment of error.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED BY FINDING THAT THE APPELLANTS DID NOT ESTABLISH BY A PREPONDERANCE OF THE EVIDENCE THAT THE APPELLEES' USE OF THE RIGHT-OF-WAY SHOULD BE LIMITED IN ANY FASHION WHATSOEVER.
The trial court denied appellants' fifth counterclaim, which alleges that the Proffitts' use of the right-of-way should be limited in accordance with the original intent of the grantor. Appellants argue that the Proffitts should not be permitted to increase the physical dimensions of the right-of-way. Appellants argue that whereas the right-of-way was never intended to be "anything more than a narrow farm path for agricultural ingress and egress," the Proffitts now want to "traverse it with huge, modern farm equipment." The testimony at trial established that tenants of the Proffitts' farm routinely accessed the Proffitts' land by using the right-of-way, and that the size of the machinery used to farm the land had increased over the years.
In its decision and judgment entry, the trial court stated:
 The Court specifically orders that * * * fencing shall not interfere with farm equipment or machinery of the size regarding which Plaintiffs' tenants testified during this trial. The Court specifically recall [sic] Scott Malott's four row setter as being a "big outfit." The Court does not believe that this right-of-way should be restricted to prevent such equipment or machinery.
The grant of an easement is not made for present use alone but anticipates future use; for example, easements for ingress and egress, which were originally granted to allow horse-drawn vehicles, later provided the owner of the dominant estate the right to travel with automobiles and trucks, modern means of transportation. Realty Title Investment Co. v. Fairport, Painesville Eastern Rd. Co. (1919),12 Ohio App. 73, 79. "[T]he exercise of the right is not to be confined to the modes in vogue when it was first acquired. The owner * * * may keep pace with the progress of invention and ingenuity, so far as is necessary to a profitable working of his property in competition with rivals." Id. at 80, quoting Marvin v. Brewster Iron Mining Co.,55 N.Y. 538, 551. We find that the trial court correctly determined that the size of the modern farming equipment in use should be accommodated.
Appellants further argue that the right-of-way is being used improperly for ingress and egress to property other than that specified at the easement's creation. Appellants claim that the original intent of the grant of the easement was to access a seventy-acre tract of land. Appellants assert that the seventy-acre tract is a part of the one hundred eighty-five acres of land currently owned by the Proffitts. Appellants reason that the right-of-way can be used only to access the seventy-acre tract of land.
The Proffitts argue that appellants did not even demonstrate that there has been an additional use of the right-of-way. The Proffitts contend that the evidence presented at trial did not show that the farming activity on their land took place anywhere other than the original seventy-acre tract. However, the trial court assumed in its decision that the Proffitts were using the right-of-way to access additional acreage adjoining the seventy-acre tract. We defer to this factual finding by the trial court judge, who not only had the benefit of hearing the testimony from the trial but also visited the properties of the feuding parties.
Appellants insist that according to Berardi v. Ohio Turnpike Comm. (1965), 1 Ohio App.2d 365, this court should find that an easement can only be used in connection with the estate to which it is appurtenant and cannot be extended by the owner to any other property which he may then own or afterward acquire, unless this is provided for in the instrument in which the easement is created. We note that although the Eighth District Court of Appeals makes this general statement of law inBerardi, that court thereafter acknowledged that this issue had not been raised by the pleadings and was not before that court. Therefore, this statement of law is merely dicta.
Nevertheless, we note that this statement of law from Berardi was adopted and followed by the Fifth District Court of Appeals in State exrel. Fisher v. McNutt (1992), 73 Ohio App.3d 403. In that case, the court determined that an easement appurtenant originally granted for access to approximately seventy acres of land could not be used to gain access for managing an adjoining forest that was nearly five thousand acres in size, where such use enhanced the burden of servient estate by sixty times. Id. at 408. Among the activities included in the proposed management of this forest were timber harvesting, mineral management, and recreation development. Id. at 405. In its analysis, the McNutt court initially acknowledged that upon examining the instrument that created the easement reasonable minds could only conclude that intentions of the original grantor and grantee of the easement were that the right-of-way would be used solely for ingress and egress to the original seventy acres. Id. The court also stated:
Furthermore, the state's plan to use the right-of-way easement to conduct forest management on the entire 4,842.30 acres of land would enhance the burden on appellants' servient estate by sixty times. This certainly is an unreasonable increase in the burden to the servient estate and could not have been intended by the original grantor and grantee.
In the case sub judice, appellants quote the original grant of easement from Brown County deed records, but this deed was not an exhibit at trial and is not part of the record before us. The current deeds to the land owned by the Proffitts and appellants were admitted into evidence at trial, but neither the Proffitts nor appellants owned their lands when the easement was created in 1924. Without the opportunity to examine the exact language used in the creation of the easement, we will not conclude, as did the McNutt court, that the intentions of the original grantor and grantee of the easement were that the right-of-way would be used only for ingress and egress of the adjoining seventy-acre lot.
In this case, the Proffitts are using the right-of-way to access an additional one hundred fifteen acres of land. Appellants failed to show that the additional use of the right-of-way to access acreage beyond the seventy-acre tract placed an additional burden upon the servient estate. Although appellants complain about the farming vehicles that traversed the right-of-way, appellants did not show that there was any measurable increase in traffic on the right-of-way due to traffic accessing acreage beyond the seventy-acre plat. See Centel Cable Television Co. of Ohio v.Cook (1991), 58 Ohio St.3d 8, 12 (holding that a new and additional use of an easement was permissible where it was similar to the use already granted and did not place an additional burden upon the servient estate).
After considering the evidence presented to the trial court, we find that the Proffitts' use of the right-of-way is not an unreasonable increase in the burden to the servient estate that could not have been intended by the original grantor and grantee. See McNutt,73 Ohio App.3d at 408. Therefore, the trial court properly determined that the Proffitts' current use of the right-of-way need not be limited. The third assignment of error is overruled.
WALSH and POWELL, JJ., concur.